FREEMAN *v.* McDONOUGH.

ESTOPPEL—LACHES—INJUNCTION.

> Where plaintiffs, landowners in the city of Detroit, after objecting to defendants' erecting a large apartment house on adjoining land, accompanied defendants to the office of the department of buildings, where they apparently accepted the commissioner's decision that defendants' plan conformed to the law (Act No. 167, Pub. Acts 1917) in every respect, and did nothing further until the building was almost finished, they are equitably estopped by reason of laches from insisting that said building be moved from three to six feet to comply with the provisions of said housing law.

Appeal from Wayne; Johnson (Clayton C.), J., presiding. Submitted April 19, 1922. (Docket No. 75.) Decided June 13, 1922.

Bill by Charles H. Freeman and others against Mabel Josephine McDonough, Barnett Levine and others to enjoin the erection of an apartment building. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Millis, Streeter, Murphy & Berns,* for plaintiffs.

*Henry S. Slyfield,* for defendants Levine.

MCDONALD, J.   This is an action to secure injunctive relief against the defendants; it grows out of the erection by Levine Brothers of a large apartment on Peterboro street, in the city of Detroit. The plaintiffs Charles H. Freeman and Mary Freeman, his wife, are the owners of the fee in the west half of lot 22 in block 87 of the sub-

division of the Cass farm in the city of Detroit. The other plaintiffs, Catherine Tattan and Francis G. Hereford, are the equitable owners, having purchased by land contract. On this lot is a three-story brick dwelling. The defendants F. Lillian McDonough and Mabel Josephine McDonough are the owners of the fee in the east half of lot 22, and the other defendants, comprising the firm of Levine Brothers, are the equitable owners, having purchased by land contract. Levine Brothers are also the owners of lot 23.

On the 22d day of September, 1920, Levine Brothers made application to the department of buildings of the city of Detroit for permission to erect an apartment building on the east half of lot 22 and lot 23, the building to be four stories and to contain 63 complete apartments.

On the 30th of September, 1920, a permit was granted, and on the day following plaintiffs Tattan and Hereford, by their attorney, Eugene Clarkson, mailed to Levine Brothers the following letter:

"DETROIT, MICHIGAN.
"LEVINE BROS.,
      "312 Kirby Avenue, East,
      "Detroit, Mich.                    Oct. 1st, 1920.
   "*Gentlemen:* I am writing on behalf of the owners of the property known as 124 Peterboro street.
   "You are about, I understand, to erect a large building on your property adjacent to the above on the east. There is some indication you are overstepping bounds, or threaten to, and violate the building code of the city and State. You have also trespassed upon the grounds of the owners on the west side of you and are piling material of various kinds thereon without authority or consent of the owners.
   "I am writing this letter to warn you that you must keep strictly within the limits of the building code, which is very strict and which I advise you to read very carefully, and to demand that you remove the material from the adjoining lot immediately; otherwise action will be started against you and an in-

junction served upon you to keep you within the limits
of the law and to make you observe the rights of other
people.

"Very truly yours,

"EUGENE CLARKSON."

When this letter was written defendants had be-
gun excavating.    On the following day plaintiffs
Hereford and Tattan took defendant Barnett Levine,
in Mr. Hereford's automobile, to the office of the de-
partment of buildings to determine whether the pro-
posed building was to be constructed according to the
housing act (Act No. 167, Pub. Acts 1917).    There
the housing law was discussed and Mr. Hereford's ob-
jections answered and explained by the commissioner,
who insisted that the plan of building conformed to
the law in every respect, and Levine Brothers could
proceed with its construction.    After that day no
further controversy arose between the parties until the
building was nearing completion, when this suit was
instituted.

The averments of the bill upon which plaintiffs
base their right to relief relate entirely to alleged vio-
lations of the housing act, in this that there were no
air intakes as required by section 16 of the act, and
that the location of the building as to the line between
the parties was not as required in sections 13 and
18.    In their answer, defendants rely on the interpre-
tation given to the act by the department of build-
ings and the health officer of the city of Detroit, and
deny any violations of the law.    On the hearing the
circuit judge denied the relief sought by plaintiffs,
and entered a decree dismissing their bill.

In our judgment, the court correctly determined the
issues between these parties.    We think it may be
fairly inferred from the evidence that after the inter-
view with the commissioner of the building depart-
ment of the city of Detroit, at which all of the plain-
tiffs were present, they acquiesced in the construction

of the building in accordance with the plans there discussed. They were then fully informed as to the location of the building and the manner of its construction. Thereafter, though they kept in close touch with the progress of the work, they made no protest and took no action to prevent the violations of which they now complain. Instead, they waited until the building was nearing completion, until the walls were up, the roof on, the heating plant, the rough plumbing and electric wiring installed, and until the defendants had expended approximately $200,000 on the property; then they came into court and asked that Levine Brothers be required to move this building three feet east of its present location or six feet east, depending upon the interpretation which the court might give to certain provisions of the housing act. On their part, defendants Levine Brothers seem to have proceeded throughout in the utmost good faith and did all that the law required of them to protect the interests of the plaintiffs and of the public. They presented their plans, specifications and detailed statements to the health officer and building department of the city of Detroit, and received their approval as conforming to the provisions of the housing act. They were given a permit to proceed with the work and they did so with the apparent acquiescence of the plaintiffs.

In view of these facts, and their failure to seasonably invoke the aid of the court, are the plaintiffs entitled to a decree which would practically wipe out the large investment made in good faith by defendants? We think not. Their prayer for relief is addressed to the equitable discretion of the court, and under these circumstances no court, in good conscience, could grant it.

"Equity will not lend its aid to a party to compel an expensive work to be undone which the party might,

by planting a bill in equity in reasonable season, have prevented." *McKee* v. *City of Grand Rapids,* 137 Mich. 212.

It is not necessary to multiply authorities in support of the application to the facts of this case of the well understood doctrine of laches and equitable estoppel. Courts have never indorsed the policy of "watchful waiting" under such circumstances as attend this case. The circuit judge was right in his determination of the facts and in the application of the law.

The decree will be affirmed, with costs to the defendants.

Fellows, C. J., and Clark, Bird, Sharpe, Moore, and Steere, JJ., concurred. Wiest, J., did not sit.